**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **QUU, INC.,**<br>**PLAINTIFF,**<br>**v.**<br>**BE SYSTEMS, INC**<br>**DEFENDANT.** | **Case No. __________________**<br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT,**
**DAMAGES AND PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff Quu, Inc. ("Quu"), by its attorneys, brings this action against Defendant BE Systems, Inc. d/b/a Broadcast Electronics ("BEI") and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for infringement of claims 10 and 12 of U.S. Patent No. 8,918,333 (the "'333 Patent"). A major Quu customer has given Quu notice of cancellation of its agreement with Quu, effective January 2027. BEI approached that customer with its infringing TREPlus product and services, and the customer cancelled in order to move to TREPlus. Quu seeks damages, including lost profits and price-erosion damages, and preliminary and permanent injunctive relief.

2. Quu owns the entire right, title, and interest in and to the '333 Patent, including all substantial rights in the '333 Patent, and possesses the rights to sue for infringement and to recover damages for past, present, and future infringement, including lost profits, royalties, and other damages available by law.

## PARTIES

3. Quu is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 3033 Rivera Drive, Suite 200, Naples, Florida 34103.

4. BEI is a corporation organized and existing under the laws of the State of Delaware. BEI has a principal place of business at 4100 North 24th Street, Quincy, Illinois 62305.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over BEI because BEI is incorporated under Delaware law and is subject to general personal jurisdiction in Delaware.

7. Because BEI is incorporated in Delaware and resides in this District for purposes of the patent venue statute, venue is proper in this District under 28 U.S.C. § 1400(b).

## THE ’333 PATENT

8. The ’333 Patent discloses and claims systems for associating songs or advertisements with supplemental data and returning associated supplemental text to an individual radio station server to enable broadcast substantially simultaneously with the content now playing. Claim 12 adds posting the supplemental data item to a website associated with that station server.

9. The ’333 Patent is entitled “Method, system and apparatus for interactive radio advertising” and issued on December 23, 2014. A true and correct copy is attached as Exhibit 1 and incorporated by reference.

10. The ’333 Patent issued from U.S. Patent Application No. 13/544,932, filed July 9, 2012. Its face identifies a claim of benefit to U.S. Provisional Patent Application No. 61/505,515,

filed July 7, 2011, and a continuation-in-part relationship to U.S. Patent Application No. 12/391,221, filed February 23, 2009, now U.S. Patent No. 8,462,645.

11. The named inventor on the ’333 Patent is Joseph Harb. Quu owns by assignment the entire right, title, and interest in and to the ’333 Patent, including rights to damages for past infringement.

12. Quu seeks damages for actionable infringement within the periods permitted by 35 U.S.C. §§ 286 and 287. Quu and its licensees have complied with the marking requirements of 35 U.S.C. § 287(a).

13. The specification of the ’333 Patent explains:

> Traditional radio lacks a visual/tactile component. As the consuming public increases dependence on immediate access to content, products and services via personal electronic devices such as smart phones, laptops, notepads and etc., it is becoming increasingly difficult for radio stations to engage listeners and to incentivize them to take action based on information that is being broadcast whether the information being broadcast is advertising, polling, and/or other types of programming. Since its inception, the radio has evolved in terms of technology and quality of sound, but not in terms of becoming interactive. Currently, a listener may not interact with broadcast radio on multiple platforms to obtain information, share information, and take other actions in response to items heard on the radio, in a timely and convenient manner.

Ex. 1, ’333 Patent at 1:21-35.

14. Independent claim 10 of the ’333 Patent recites:

> [10.pre] A system comprising:
>
> [10.a] an individual radio station server, arranged to broadcast radio content via a transmitter;
>
> [10.b] an interactive radio server, arranged for communications with the radio station server;
>
> [10.c] a database accessible to the interactive radio server and arranged to store a plurality of first supplemental data items, each of the first supplemental data items associated with at least one media item comprising a song or an advertisement;

> [10.d] the individual radio station server arranged to send a message to the interactive radio server, the message identifying substantially in real time a specific radio content item now playing on the radio station server;
>
> [10.e] wherein the interactive radio server is configured to query the database responsive to receiving the message, and to download a first supplemental data item associated with the specific radio content item identified by the message;
>
> [10.f] and wherein the interactive radio server is further configured to send the downloaded first supplemental data item in a reply message to the radio station server, so as to enable the radio station server to broadcast the first supplemental data item substantially simultaneously with the specific radio content item now playing,
>
> [10.g] wherein the first supplemental data item comprises textual content for delivery on a display screen of a user device currently receiving the said radio content now playing.

*Id.* at 15:34-16:6, Claim 10.

15. Dependent claim 12 of the ’333 Patent recites:

> [12] The system of claim 10 wherein the interactive radio server is arranged to post the supplemental data item to a website associated with the radio station server.

*Id.* at 16:10–12, Claim 12.

**THE ’333 PATENT’S TECHNICAL ADVANCE**

16. The ’333 Patent addresses a technical problem in broadcast radio: the systems that schedule programming do not reliably identify what a station is airing at a given moment. A station’s traffic system records when sales personnel ask for an advertisement to run, while a separate automation system plays the audio. The specification explains that an advertisement scheduled for 12:10 p.m. “will probably play at 12:20 pm EST,” and that the automation system may carry a different description of the same advertisement than the traffic system. Ex. 1, 7:46–8:8. It describes the resulting difference between scheduled and actual air times as “a major issue in radio.” *Id.* at 10:20–28.

17. Claim 10 does not rely on a standalone schedule. It claims an individual radio station server arranged to send the interactive radio server a message "identifying substantially in real time a specific radio content item now playing." In the specification, the station's automation system determines which item is playing in real time, generates an event each time a song or advertisement plays, and sends the interactive radio server a message identifying that particular item. *Id.* at 4:66–5:9, 7:29–45; Figs. 1a–1b.

18. Claim 10 then requires a specific responsive exchange between the two servers. The interactive radio server is configured to query a database that stores supplemental data items associated with songs or advertisements "responsive to receiving the message," to retrieve the item associated with the content the message identified, and to send that item "in a reply message to the radio station server." The specification describes the interactive radio server looking up the identified media item in a stored data structure, retrieving the associated supplemental data, and sending it to the station server in response to the now-playing message. *Id.* at 5:10–22, 6:12–21; Fig. 1a.

19. This arrangement changes the supplemental content that is actually transmitted. Because the reply is tied to the item actually on the air, the station server can broadcast the returned text "substantially simultaneously with the specific radio content item now playing," and the text appears on the display of a receiver tuned to that content. The specification describes the transmitter sending the supplemental data and the media item together over broadcast data channels such as RDS and HD Radio, and shows an advertiser's text on a car-stereo display while that advertiser's audio commercial airs. *Id.* at 5:23–37, 9:44–57; Fig. 2. RDS was an existing standard for embedding small amounts of digital information, such as station identification and program information, in FM broadcasts. *Id.* at 3:56–60. At the time of the invention, stations

commonly used that channel to display station identification or song title and artist text exported from the automation system. Claim 10 instead uses the broadcast data path to carry stored content that is selected by, and returned in response to, the station's real-time identification of the particular song or advertisement playing.

20. Claim 12 adds a further requirement to the system of claim 10: the interactive radio server is "arranged to post the supplemental data item to a website associated with the radio station server." The specification describes the interactive radio server looking up the supplemental data to be displayed for an identified item and sending it to the pertinent outlets, including the station's Internet website as well as the station server for broadcast. *Id.* at 8:38–50, 9:38–42, 16:10–12.

## QUU'S USE OF THE '333 PATENT

21. Quu commercializes the technology of the '333 Patent through its visual-radio platform.[1] In Quu's automation-connected implementation, an individual station's automation system and station-side Quu360 and JumpGate software work with Quu's hosted server and database. Ex. T-02, QUU_000182; Ex. T-03, QUU_000183.

22. The station's automation system supplies the audio for transmission. Quu360 and JumpGate handle the station-side metadata communications and deliver display content to the station's RDS encoder and HD Radio equipment. The audio and the supplemental data are delivered through the station's broadcast chain to its listeners. Quu's hosted server stores and retrieves the display content. Ex. T-02, QUU_000182; Ex. T-03, QUU_000183; Ex. T-05, QUU_000185–QUU_000188.

[1] Exhibits T-01 through T-23 cited in this Complaint are attached hereto and incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

23. When an item begins to play, the station-side software sends Quu's hosted server a message identifying that item. The hosted server uses the identifying information to retrieve the associated display content from its database and returns that content to the station-side software for broadcast with the identified item. This is the message, retrieval and reply arrangement recited in claim 10. Ex. T-02, QUU_000182; Ex. T-03, QUU_000183.

24. Quu stores song-associated display content and advertiser campaign content containing text for radio displays. Its API provides RDS/HD text fields, identifies the associated advertisement by ISCI or AdID, and assigns campaign line items to stations and specific cart numbers. Ex. T-06, QUU_000191–QUU_000194.

25. Quu offers distinct commercial products on its platform. AdSync displays an advertiser's text and, where configured, an image while that advertiser's audio commercial plays. Ex. T-06, QUU_000191–QUU_000193. Content Partnership displays a sponsor's visual message during music or other programming, without an accompanying audio commercial and without interrupting the audio. Radio stations use these products to sell visual advertising alongside, and in addition to, their audio commercial inventory.

26. Quu earns recurring fees by licensing and supporting its platform for radio broadcasters. Its customers use the supplemental-content capabilities to provide program information and create visual advertising inventory. Quu has built the technical integrations, installation support, training and customer relationships needed to deliver those services commercially.

**THE ACCUSED PRODUCTS**

27. BEI makes, uses, sells, offers to sell, licenses, hosts and supports its TREPlus product in the United States. As set out below and in Exhibit 2, BEI's own making and use of

complete TREPlus systems infringes claims 10 and 12 of the ’333 Patent, and BEI induces and contributes to its customers’ infringement of those claims.

28. Quu incorporates by reference the infringement claim chart attached as Exhibit 2, which maps claims 10 and 12 to the accused TREPlus configurations.[2]

29. TREPlus has a cloud-hosted platform and a desktop client installed at individual stations. BEI distributes the station-specific desktop-client software, provisions customer accounts and station identifiers, and supplies access to the hosted platform. BEI instructs customers to run separate client instances and folders when multiple stations share a computer. Ex. T-09, QUU_000014–QUU_000016, QUU_000043; Ex. T-10, QUU_000117–QUU_000118.

30. BEI’s product page states that TREPlus accepts “now playing” data from automation and supplies data to RDS, HD, and the Web. Ex. T-12, QUU_000096. BEI describes TREPlus as a “cloud-hosted solution” and “hosted software platform”; Radio World likewise describes a “cloud-hosted platform.” Ex. T-20, QUU_000002; Ex. T-11, QUU_000088; Ex. T-22, QUU_000009.

31. The Accused Products are automation-connected TREPlus Advertising and Network configurations using Linked Messages. For claim 12, the Accused Products are those configurations in which the same supplemental message content is also published to the station’s website through XML/FTP output. BEI licenses the Advertising and Network message capabilities and identifies Messages as unavailable with the Basic license. Ex. T-11, QUU_000088; Ex. T-23, QUU_000074.

[2] Quu reserves the right to amend and/or supplement its infringement positions and Exhibit 2 as discovery, claim constructions, or other developments warrant as the case progresses.

32. In the Accused Products, the individual radio station server is the station's automation/playout system together with its station-specific TREPlus desktop client, and the interactive radio server is the hosted TREPlus platform. The station's RDS encoders, HD importers/exporters and transmitter are broadcast-output components.

33. The first supplemental data item is the cut-linked supplemental message containing broadcast text, stored in a message record with broadcast-text and WEB fields. The message records and cut-ID associations are retained and available through the hosted message-management interface. Ex. T-09, QUU_000036, QUU_000038–QUU_000039; Ex. T-11, QUU_000088–QUU_000089.

34. In a BEI webinar on TREPlus, a presenter described a TREPlus client installed on a station's playout server that communicates with the automation system, transmits to the station's RDS equipment, and "goes out to the cloud to get everything it needs." Ex. T-15, QUU_000142 (22:27–23:01), YouTube generated transcript of https://www.youtube.com/watch?v=s51gjTQ1_pM.

**The Accused Products Meet Every Limitation of Claim 10**

35. Each Accused Product meets every limitation of claim 10, as set out below and in Exhibit 2.

36. [10.a] The individual radio station server is the station's automation/playout system together with its station-specific TREPlus desktop client, arranged to broadcast through the station's transmitter.

37. [10.b] The interactive radio server is the hosted TREPlus platform communicating with that station-specific client.

38. [10.c] The message database accessible to the hosted platform stores multiple cut-linked supplemental messages associated with songs or advertisements. BEI's TREPlus Installation and Configuration Guide (Ex. T-09) (the "Guide") defines Linked Messages as "Messages associated with a specific cut ID" and states: "Every time the specified cut plays in your automation system TREPlus will air this message." Ex. T-09, QUU_000014–QUU_000015, QUU_000036, QUU_000038–QUU_000039, QUU_000043–QUU_000047.

39. [10.d] The station server sends the hosted platform a now-playing message identifying substantially in real time the particular song or advertisement actually playing. The guide defines event types by what automation reports when music or a commercial plays, and BEI's TREPlus Quick Start Guide (Ex. T-10) (the "Quick Start Guide") directs the installer to play automation events and confirm title and artist in the hosted On Air dashboard. Ex. T-09, QUU_000021–QUU_000022, QUU_000044–QUU_000045; Ex. T-10, QUU_000119, step 18. The webinar describes a WideOrbit "on start play" export. Ex. T-15, QUU_000149 (46:16–46:53).

40. [10.e] Responsive to that message, the hosted platform queries the message database using the identified cut and downloads its associated supplemental message. The saved cut-ID associations and message-priority rules select the Linked Message for the identified cut, and the station client obtains the supplied content from the hosted service. Ex. T-09, QUU_000036–QUU_000039; Ex. T-11, QUU_000088–QUU_000089; Ex. T-15, QUU_000142 (22:36–23:01).

41. [10.f] The hosted platform returns the retrieved supplemental message in a reply to the same station-specific client that conveyed the now-playing event. The client then sends the returned text to the station's configured RDS or HD destinations for broadcast substantially simultaneously with the identified content. The webinar describes the client communicating with

automation, transmitting to RDS equipment, and going to the cloud "to get everything it needs." Ex. T-15, QUU_000142 (22:27–23:01). The Linked Message playback instructions and configured broadcast destinations support that responsive return and broadcast arrangement. Ex. T-09, QUU_000036–QUU_000039, QUU_000046–QUU_000047; Ex. T-10, QUU_000119.

42. [10.g] The supplemental message contains text for display on the receiving listener's device while the associated radio content plays. The message editor provides RDS RadioText, HD Radio Artist and Title, and Dynamic PS fields. Ex. T-09, QUU_000039. BEI illustrates advertising text on RDS and HD dashboard displays. Ex. T-11, QUU_000090.

**The Accused Products Meet Every Limitation of Claim 12**

43. In the station-website configuration, the Accused Products meet every limitation of claim 10 as set out above. In that configuration the hosted TREPlus platform is further arranged to post the supplemental message content through the station's XML/FTP destination to a website associated with the station server. Ex. T-09, QUU_000015, QUU_000039, QUU_000043, QUU_000050; Ex. T-10, QUU_000119–QUU_000120; Ex. T-11, QUU_000088.

44. The posted content is the same supplemental message content used for broadcast, entered in the message record's broadcast and WEB fields. The editor example places "Commercial Message #1" in both fields. BEI states that the WEB message supplies metadata to the station's website through XML output. Ex. T-09, QUU_000038–QUU_000039. The receiving website is the station's content website associated with its station server.

45. The hosted TREPlus platform posts the message's WEB content for each current event through the station-specific client's configured XML/FTP destination, using the host and credential information configured for that station, to the station's website. Ex. T-09, QUU_000015, QUU_000050; Ex. T-10, QUU_000119–QUU_000120.

**BEI's Notice and Knowledge of the '333 Patent**

46. On November 4, 2026, Quu's counsel sent BEI a written notice of infringement by email to Rich Redmond at rredmond@bdcast.com and by FedEx overnight, signature required, addressed to him at 4100 North 24th Street, Quincy, Illinois 62305. The letter identified the '333 Patent, stated that TREPlus and BEI's and its customers' activities infringe directly and indirectly, and enclosed a copy of the patent, an infringement claim chart demonstrating infringement of claims 10 and 12, and supporting documents. On November 5, 2026, counsel for BEI confirmed receipt of the notice by email.

47. BEI has had actual knowledge of the '333 Patent and of Quu's charge that TREPlus infringes it since no later than November 5, 2026. This Complaint and Exhibit 2 further detail the infringement of claims 10 and 12 by the Accused Products.

**BEI'S INFRINGEMENT HARMS QUU**

48. Quu and BEI compete to supply visual-radio capabilities to radio broadcasters. BEI markets TREPlus as a way to link supplemental messages to radio programming and deliver those messages through the broadcaster's infrastructure. TREPlus competes for the customers and subscription business that Quu developed around its patented technology. Ex. T-11, QUU_000088–QUU_000090.

49. Recently, a major and long-standing Quu customer gave notice of cancellation. Under its agreement with Quu, the customer receives Quu's Premium Services across its radio stations for an annual subscription fee. Those services include Content Partnership, AdSync and related capabilities.

50. BEI has offered TREPlus to the customer as a replacement for Quu's platform, including the supplemental-content functionality accused here.

51. In an effort to retain the customer, Quu proposed a substantial reduction in the customer's annual fixed fee while preserving access to Content Partnership, AdSync and related services, among other things. The customer did not accept the proposal.

52. The customer has given Quu the contractually required notice cancelling its agreement, effective January 2027. The customer cancelled in order to replace Quu's platform with TREPlus. The cancellation ends a long-established, recurring subscription relationship, and Quu will lose that subscription business when the cancellation takes effect.

53. BEI's offer of the infringing TREPlus product caused the customer's cancellation. The availability of the infringing functionality was the primary consideration in choosing TREPlus, and the customer would not have chosen TREPlus without the infringing functionality. But for BEI's infringement, Quu would have retained the customer's subscription business and earned the associated profits.

54. BEI's infringement will negatively impact the prices Quu is able to charge for its patented products, and also negatively impact Quu's ability to continue to operate, develop, and support its products.

55. Quu seeks the profits it would have earned on the subscription sales lost through the customer's cancellation and on any other sales displaced by BEI's infringement, and the profits lost on sales that Quu retains at prices depressed by that infringement.

56. BEI's continuing infringement also threatens further losses of customer relationships, goodwill and competitive position. A TREPlus deployment at this customer would give BEI an operating relationship with a prominent broadcaster and a competitive reference built on the accused functionality. Quu seeks preliminary and permanent injunctive relief to prevent that further injury.

## COUNT I

## BEI'S DIRECT INFRINGEMENT OF CLAIMS 10 AND 12 OF THE '333 PATENT

57. Quu repeats, realleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

58. The claims of the '333 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

59. BEI directly infringes claims 10 and 12 of the '333 Patent under 35 U.S.C. § 271(a) by making and using complete accused systems in the United States, including in its development, integration, testing and demonstration of TREPlus. In those activities, BEI combines a station automation/playout system and a station-specific TREPlus client with the hosted TREPlus platform and message database and configures the station-side broadcast outputs. BEI puts the complete system into service, initiates the now-playing events and Linked Message responses, and obtains the benefit of the resulting supplemental-text output. The systems BEI makes and uses meet each limitation of claim 10 as alleged above and in Exhibit 2.

60. BEI's own materials describe the testing infrastructure and procedures used with TREPlus. The Guide depicts DEMO station configurations and defines automation sources and RDS/HD destinations, and the Quick Start Guide directs testing with actual automation events and a receiver or HD stream. Ex. T-09, QUU_000022, QUU_000043–QUU_000047; Ex. T-10, QUU_000119 (steps 18–19). The BEI webinar describes extensive use of Inovonics receivers in testing and development. Ex. T-15, QUU_000156 (1:07:17–1:07:22). BEI identifies its Quincy facility as a location for product research, design, fabrication and testing. Ex. T-11, QUU_000086.

61. The systems BEI makes and uses also include the station-website configuration, in which the hosted TREPlus platform is arranged to post the supplemental message content through

the client's XML/FTP destination to a website associated with the station server, as alleged above and in Exhibit 2. BEI documents and instructs that configuration, including verification of the XML output, and markets website output as a TREPlus function. Ex. T-09, QUU_000039, QUU_000050; Ex. T-10, QUU_000119–QUU_000120; Ex. T-11, QUU_000088. BEI's making and use of those systems infringes claim 12.

**Willful Infringement**

62. BEI has had actual knowledge of the '333 Patent and of Quu's infringement charge since no later than November 5, 2026. BEI has continued to make and use the accused systems after receiving that notice, despite a known or obvious risk that doing so infringes the '333 Patent. BEI's continued direct infringement is deliberate and willful, and Quu seeks enhanced damages under 35 U.S.C. § 284.

**Damages**

63. BEI's direct infringement has damaged Quu and will continue to do so. Quu is entitled under 35 U.S.C. § 284 to damages adequate to compensate for that infringement, including lost profits from lost sales and price erosion, and in no event less than a reasonable royalty, together with interest and costs, in an amount to be proved at trial. Quu also seeks preliminary and permanent injunctive relief under 35 U.S.C. § 283.

**COUNT II**

**BEI'S INDIRECT INFRINGEMENT OF CLAIMS 10 AND 12 OF THE '333 PATENT**

64. Quu repeats, realleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

65. BEI induces its customers' infringement of claims 10 and 12 under 35 U.S.C. § 271(b) and contributes to infringement of claims 10 and 12 under § 271(c). Quu pleads these

theories in addition to, and where appropriate in the alternative to, BEI's own making and use alleged in Count I.

66. Each customer use alleged in this Count puts a complete claimed system into service and obtains its benefit. The customer operates its station-side functions and initiates the coordinated operation of the hosted interactive radio server, database and returned supplemental-content output.

**BEI's TREPlus Customers Directly Infringe**

67. BEI licenses and supplies TREPlus to companies owning or operating terrestrial radio stations in the United States (each, a "TREPlus Customer"). BEI's March 17, 2025 release reports that CRISTA Media, operating KCMS-FM, KWPZ-FM, and KCIS 630 AM in the Seattle market, upgraded to TREPlus and connected station automation to RDS and HD outputs. Ex. T-21, QUU_000004–QUU_000006.

68. TREPlus Customers obtain software and hosted-platform access from BEI under licenses or subscriptions. BEI describes a "hosted software platform" and a "pay-as-you-go model," with Basic, Message Manager–Advertising, and Network levels and an additional HD software key. Ex. T-11, QUU_000088, QUU_000090.

69. The customers' uses take place at U.S. radio stations operating the accused automation-connected configurations.

**TREPlus Customers Directly Infringe Claim 10**

70. Each TREPlus Customer operating an accused automation-connected Linked Message configuration directly infringes claim 10 under 35 U.S.C. § 271(a) by using the complete system described above and in Exhibit 2.

71. Each accused TREPlus Customer puts the complete arrangement into service and obtains its benefit. It operates station automation and the station-specific client, associates Linked Message content, configures inputs and outputs, and starts the playback that initiates the hosted service's responsive operation. The customer receives the returned text for broadcast with its programming and benefits from that coordinated operation of the system as a whole.

72. The operator of WMUZ-FM uses the infringing system in that manner. Crawford Broadcasting Company ("Crawford"), the operator of WMUZ-FM, reported in its April 2025 newsletter that TREPlus links advertising messages to audio spots, that companion content was created for each advertiser running spots at WMUZ, and that relevant text appeared as the advertisements ran. Ex. T-14, QUU_000104. Crawford reports the Denver TREPlus song-metadata output as "all time-aligned with the audio." Ex. T-13, QUU_000121.

**TREPlus Customers Directly Infringe Claim 12**

73. TREPlus Customers that use the station-website configuration use a system that meets every limitation of claim 12, as alleged above and in Exhibit 2. Those customers put the complete system into service in the United States, initiate its operation through station playback, and obtain the resulting broadcast and website output, and thereby directly infringe claim 12 under 35 U.S.C. § 271(a).

**BEI Actively Induces Infringement Under 35 U.S.C. § 271(b)**

74. BEI has had actual knowledge of the '333 Patent and of Quu's charge that TREPlus infringes it since no later than November 5, 2026, when its counsel confirmed receipt of Quu's written notice. This Complaint and Exhibit 2 further identify the infringement of claim 12 by the station-website configuration.

75. After receiving that notice and with knowledge that the accused customer uses infringe the ’333 Patent, BEI continues to take affirmative steps specifically intended to cause TREPlus Customers to use the accused systems, including by:

(a) marketing the automation-connected Advertising and Network features, including “messages linked to audio,” for broadcast display with the associated programming and for station-website delivery. Ex. T-11, QUU_000088–QUU_000090;

(b) distributing the Advertising/Network Installation and Configuration Guide and Quick Start Guide with instructions for creating cut-linked messages, connecting station automation, configuring RDS/HD destinations, and configuring the WEB field and XML/FTP destination. Ex. T-09, QUU_000036–QUU_000039, QUU_000043–QUU_000050; Ex. T-10, QUU_000118–QUU_000120;

(c) providing technical support for automation-data flow and destination configuration, including assistance using the station client’s configuration and logs. Ex. T-10, QUU_000119–QUU_000120;

(d) supplying the Advertising and Network licenses and client software enabling the accused Linked Message functions. Ex. T-09, QUU_000014, QUU_000036; Ex. T-11, QUU_000088;

(e) hosting and operating the TREPlus platform and provisioning the accounts and station-specific identifiers used for the accused customer operations. Ex. T-09, QUU_000014–QUU_000016, QUU_000043; Ex. T-11, QUU_000088; and

(f) assisting customers with installation and configuration of the accused automation, client, message, and output arrangement. BEI's published materials describe customer support and account provisioning; its CRISTA release reports work with that customer on installation and input/output setup. Ex. T-09, QUU_000014–QUU_000016; Ex. T-21, QUU_000005–QUU_000006.

76. BEI specifically intends the resulting infringement. With actual knowledge of the patent and the charged conduct, it continues to supply and instruct the cut-linked, station-triggered retrieval-and-broadcast arrangement, and the additional same-content website output. Its instructions, account provisioning and hosted operation bring about and sustain those customer uses.

77. BEI's knowing instructions, component supply and hosted operation cause TREPlus Customers to put and keep the accused systems in service and thereby directly infringe claims 10 and 12. BEI is liable for inducing that infringement from the time it had actual knowledge of the '333 Patent and of the infringement its conduct causes.

**BEI Contributes to Infringement Under 35 U.S.C. § 271(c)**

78. BEI sells and offers to sell within the United States the Linked Message software functionality supplied with its Advertising and Network station-client licenses, including the associated WEB-message and XML-output function (the "TREPlus Components"). Those components convey cut-specific now-playing events to the hosted message service, receive the corresponding returned supplemental text, and route it to the station's broadcast outputs and, where configured, to the station's website.

79. The TREPlus Components are a material part of the inventions of claims 10 and 12. They implement the station-specific client's communication with the hosted interactive radio server, the delivery of the responsive supplemental message into the station's broadcast-output path and, for claim 12, the delivery of the same message content to the station's website.

80. The TREPlus Components are especially made and especially adapted for use in infringing claims 10 and 12. They are programmed to communicate the particular cut now playing, obtain the associated stored Linked Message through the hosted service, and deliver its text to the configured broadcast destinations with the associated content. Ex. T-09, QUU_000036–QUU_000039, QUU_000043–QUU_000047; Ex. T-15, QUU_000142 (22:27–23:01). They are likewise programmed to deliver the same message content to the station's website through the WEB field and XML/FTP destination, and BEI advertises that function. Ex. T-09, QUU_000039, QUU_000050; Ex. T-11, QUU_000088.




Ex. T-11, QUU_000088 (metadata-management diagram showing "WEB" as an output for the advertising content).

81. The TREPlus Components are a distinct, separately licensed part of the supplied software and are not a staple article or commodity of commerce suitable for substantial noninfringing use. BEI licenses the Advertising and Network message capabilities separately; the Basic license does not include Messages, and BEI's manual describes Linked Messages separately from timer-triggered and other message types. Ex. T-11, QUU_000088; Ex. T-23, QUU_000074; Ex. T-09, QUU_000036–QUU_000038, QUU_000045.

82. Since receiving Quu's written notice, BEI has known that the TREPlus Components are especially made or adapted for use in the infringing systems and that its customers' accused uses infringe. BEI nevertheless continues to sell and offer those components for those uses.

83. TREPlus Customers use the TREPlus Components supplied by BEI to directly infringe claims 10 and 12 as alleged above, and BEI's knowing supply of those material, specially adapted, nonstaple components contributes to that infringement under 35 U.S.C. § 271(c).

**Willful Infringement**

84. After receiving Quu's written notice, BEI has continued to instruct, supply and support the infringing customer configurations with actual knowledge of the '333 Patent and of the infringement its conduct causes. BEI's continued inducement and contributory infringement is deliberate and willful, and Quu seeks enhanced damages under 35 U.S.C. § 284.

**Remedies**

85. BEI's infringement has caused, and unless enjoined will continue to cause, Quu irreparable harm for which there is no adequate remedy at law, warranting injunctive relief under 35 U.S.C. § 283.

86. Quu and BEI compete directly to supply visual-radio capabilities to broadcasters, and the ’333 Patent gives Quu the right to exclude others, including BEI, from practicing the claimed inventions.

87. BEI’s infringement deprives Quu of that right. In addition to injuries already done to Quu, it threatens further loss of customer relationships, market position, goodwill, and competitive standing.

88. Quu’s injuries, including the loss of long-term customer relationships, price erosion, and BEI’s use of infringing deployments as competitive references in the market, are difficult or impossible to quantify and cannot be fully compensated by money damages.

89. The balance of hardships favors Quu because BEI has no legitimate interest in continuing to infringe, particularly after receiving Quu’s November 4, 2026 notice, and the public interest is served by enforcing valid patent rights.

90. BEI’s inducement and contributory infringement have damaged Quu and will continue to do so. Quu is entitled under 35 U.S.C. § 284 to damages adequate to compensate for that infringement, including lost profits from lost sales and price erosion, and in no event less than a reasonable royalty, together with interest and costs, in an amount to be proved at trial and without duplicative recovery. Quu also seeks preliminary and permanent injunctive relief under 35 U.S.C. § 283 to prevent continuing infringement and irreparable competitive injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Quu respectfully requests that this Court enter:

(a) A judgment in favor of Quu that BEI has directly infringed claims 10 and 12 of the ’333 Patent under 35 U.S.C. § 271(a);

(b) A judgment in favor of Quu that BEI has induced infringement of claims 10 and 12 of the ’333 Patent under 35 U.S.C. § 271(b);

(c) A judgment in favor of Quu that BEI has contributed to infringement of claims 10 and 12 of the ’333 Patent under 35 U.S.C. § 271(c);

(d) A judgment and order requiring BEI to pay Quu damages under 35 U.S.C. § 284, including lost profits from lost sales and price erosion attributable to the infringement, in an amount no less than a reasonable royalty, together with recoverable costs and pre- and post-judgment interest, with an accounting as needed;

(e) A judgment and order awarding Quu its reasonable attorneys’ fees under 35 U.S.C. § 285 if the Court determines that this is an exceptional case;

(f) A finding that BEI’s infringement has been willful and an award of enhanced damages under 35 U.S.C. § 284;

(g) A preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting BEI’s further infringement of claims 10 and 12 of the ’333 Patent through the accused configurations, including its own infringing making and use and its actionable inducement and contributory infringement;

(h) In the alternative to a permanent injunction, an award of an ongoing royalty for BEI’s continuing infringement; and

(i) Any and all other relief as the Court may deem appropriate and just under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Quu demands a trial by jury on all issues triable as of right.

Dated: November 11, 2026

**FISHERBROYLES, LLP**

*/s/ Brian D. Tome*

Brian D. Tome (ID 005300)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 383-8136
brian.tome@fisherbroyles.com

Adam Yowell (*pro hac vice* forthcoming)
Alastair J. Warr (*pro hac vice* forthcoming)
*Attorneys for Plaintiff Quu, Inc.*